O

# United States District Court
# Central District of California

| | |
|---|---|
| RADIALL S.A.; and RADIALL USA, INC., <br><br>            Plaintiff, <br><br>     v. <br><br> GLENAIR, INC., <br><br>            Defendant. | Case № 2:14-cv-00822-ODW(VBKx) <br><br> **CLAIM-CONSTRUCTION ORDER** <br> **[45]** |

## I.   INTRODUCTION

This patent case relates to multi-contact connectors for use in the field of on-board aircraft.  Plaintiffs Radiall S.A. and Radiall USA, Inc. (collectively "Radiall" or "Plaintiff") asserts U.S. Patent No. 7,384,312 ("the '312 Patent"), entitled "Multi-Contact Connector" against Defendant Glenair Inc. ("Glenair" or "Defendant").  The construction of eight terms is in dispute.

## II.   FACTUAL BACKGROUND

Radiall S.A. is a French corporation and Radiall USA, Inc. is its wholly owned subsidiary incorporated under Arizona law. (Compl., ECF No. 1 at ¶¶ 5–6.)  Plaintiff manufactures and supplies interconnect components for industries such as aerospace, defense, industrial, medical, and telecommunications.  (*Id*. ¶ 8.)  Glenair, a California corporation, is a competitor in the same industry of electrical connectors.  (*Id*. ¶ 7.)

Radiall S.A. is the assignee and sole and exclusive owner of all right, title, and interest in the '312 Patent. (*Id.* ¶ 9.) The patent relates to multi-contact connectors for use in the field of on-board aircraft. *See* '312 Patent at col. 1, ll. 5–7. Multi-contact connectors provide secure mated connections for cables of equipment so that electrical signals conveying information can be transmitted to and from aircraft equipment. (Opening Claim Construction Brief, ECF No. 45-1 at 1–2.) The connectors can also provide shieling from electromagnetic interference (EMI). *See* '312 Patent at col. 1, ll. 8–9. The '312 Patent describes this multi-contact connector unit as having the following components: a case body for the connector unit, electrical contacts to which the cables may be attached, and a clamping element for ensuring the cables are securely attached to the connector unit. Representative figures 7 and 9 are below:



Radiall alleges that Glenair infringes at least claims 2, 3, 7–11, 16 and 17. Representative claim 16 recites:

> A multi-contact connector comprising:
>
> a case body including a cable-attachment portion configured to enable cables to be attached to said portion, the attachment portion projecting from a rear of the case body; and
>
> electrical contact elements mounted in the connector, the contact elements being connected to cables,

> wherein the case comprises a shielding cap mounted on the case body, the cables being attached to a fastening lug on a rear portion of the shielding cap by a clamping fitting, the fastening lug projecting from a tubular opening of the rear portion,
>
> said connector comprises a conductive shielding cap configured to be assembled to the case body, and
>
> the shielding cap comprises a rear portion including a substantially U-shaped cross-section said rear portion being configured to co-operate with the attachment portion of the case body so as to form a tubular opening in the case for inserting cables into the case.

'312 Patent at col. 12, ll. 9–29.

On December 15, 2014, the parties filed their final joint claim chart. (ECF No. 47.) The parties dispute the construction of eight terms: (1) "clamping fitting," (2) "tubular opening," (3) "longitudinal gutter," (4) "fastening lug," (5) "cable-attachment portion/attachment portion," (6) "said rear portion being configured to co-operate with the attachment portion of the case body so as to form a tubular opening in the case for inserting cables into the case," (7) (a) "projection from a rear of the case body"/(b) "fastening lug projecting from a tubular opening of the rear portion."

Radiall filed its Opening Claim Construction Brief on December 15, 2014. (ECF No. 45.) Glenair responded and Radiall replied. (ECF Nos. 52, 54.) On January 23, 2015, the Court held a claim-construction hearing. The Court construes the disputed terms below.

### III. LEGAL STANDARD

The purpose of claim construction is to determine the meaning and scope of the patent claims alleged to be infringed. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). Claim construction is a question of law to be decided by the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967,

979 (Fed. Cir. 1995). In determining the proper construction of a claim, the Court reviews both intrinsic and extrinsic evidence, placing emphasis on the former.

**A.     Intrinsic Evidence**

The court begins with intrinsic evidence of claim meaning—which consists of the claim language, patent specification, and, if in evidence, prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

The Court must always begin with an examination of the claim language itself. *August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1284 (Fed. Cir. 2011); *see also Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("The claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim."). Claim language is paramount; the other intrinsic and extrinsic evidence—while valuable—cannot be utilized to rewrite the claim language. *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).

The terms used in the claims are generally given their "ordinary and customary meaning." *Phillips*, 415 F.3d at 1312. This "ordinary and customary meaning" is the meaning as understood by a person of ordinary skill in the art ("POSITA") in question at the time of the invention. *Id*. The POSITA "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id*.

A patentee is presumed to have intended the ordinary meaning of a claim term unless the patentee "(1) . . . sets out a definition and acts as his own lexicographer, or (2) disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comp. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

The specification is "always highly relevant to the claim construction analysis." *Markman*, 52 F.3d at 978. "[T]he specification may reveal a special definition given

to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. But the court must be wary of "improperly importing a limitation from the specification into the claims." *Retractable Techs., Inc. v. Becton*, 653 F.3d 1296, 1305 (Fed. Cir. 2011).

The Court may also consider the patent's prosecution history. The prosecution history "encompasses the complete record of the proceedings before the PTO, including the prior art cited during the examination of the patent." *Id.* The prosecution history provides evidence about how the United States Patent and Trademark Office ("USPTO") and the inventor understood the invention. *Id.* But "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*

### B. Extrinsic Evidence

Courts may also rely on extrinsic evidence to better understand the underlying technology and to determine what a POSITA would understand the claim terms to mean. *Phillips*, 415 F.3d at 1318. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert testimony, dictionaries, and learned treatises." *Id.* at 1317. But while extrinsic evidence can be useful, it is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319. Thus, it is less significant than intrinsic evidence. *Id.*

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## IV.   DISCUSSION

| CLAIM TERM | RADIALL'S CONSTRUCTION | GLENAIR'S CONSTRUCTION |
|---|---|---|
| 1. **"Clamping fitting"** | A relatively small part, separable from the connector, such as a collar, that fastens a component to the connector by pressing them together, *e.g.*, by pressing cables and the cable-attachment portion together, or by pressing cables and the fastening lug together. | A structure used to grip or compress parts together |

This term appears in claims 1, 16, and 17.  Radiall argues that the ordinary meaning of "fitting" is a "small, detachable part used in the assembly of a device" and the '312 Patent uses "clamping fitting" consistent with this meaning.  (ECF No. 45-1 at 4.)  Radiall further argues that a person of ordinary skill would understand that the clamping fitting presses the components together with a force that holds the components in place.  (*Id.* at 5.)

Glenair presents a construction that adopts dictionary definitions for "clamp." (*See* ECF No. 52 at 6.)  The dictionaries present the ordinary meaning of "clamp" which is "[a]ny various devices used to join, grip, support, or compress mechanical or structural parts."  (*See* Rho Decl., Ex. A.)

Radiall's construction improperly imports limitations from the specification to narrow the term.  The limitations of "a relatively small part" and "separable from the connector" are ambiguous and unsupported by the specification.  The phrase "such as a collar" is also unnecessary in the term's construction because the limitation in dependent claim 5 already requires that the clamping fitting "comprises a conductive collar."  '312 Patent at col. 11, ll. 23–24; *see Phillips*, 415 F.3d at 1314–15 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.")

The remainder of Radiall's construction includes superfluous limitations that are already described in the claim language. Specifically, the "clamping fitting" is used to secure the cables to the case body: ". . . the contact elements being connected to cables, wherein the cables are secured to the cable-attachment portion of the case body by a *clamping fitting* . . ." and ". . . the cables being attached to a fastening lug on a rear portion of the shielding cap by a *clamping fitting* . . . ." '312 Patent at col. 11, ll. 1–4; col. 12, ll. 18–20 (emphasis added). Because the claims describe the location and function of the "clamping fitting," the only construction necessary is one that clarifies how the cables are being secured. That is, the definition of "clamping."

Nothing in the claim language or specification indicates that "clamping" should not have its plain and ordinary meaning. Therefore, the Court adopts Glenair's construction and construes the term "clamping fitting" to mean "a structure used to grip or compress parts together."

| CLAIM TERM | RADIALL'S CONSTRUCTION | GLENAIR'S CONSTRUCTION |
|---|---|---|
| 2. **"Tubular opening"** | An opening shaped like a hollow cylinder along at least some length | Hollow opening |

"Tubular opening" appears in claims 1, 16, and 17. The dispute between the parties regarding this term is whether "tubular" infers a cylindrical shape. Radiall argues that tubular necessarily connotes a cylindrical shape because "tube" is defined as a hollow cylinder. (ECF No. 45-1 at 6–7.) Glenair argues that there is no support in the claim language or specification that tubular requires a cylindrical shape and that Radiall could have chosen to describe the opening as a "cylindrical opening." (ECF No. 52 at 10.)

Glenair is correct that the '312 Patent is absent of the terms "cylinder," "cylindrical," or "oval" and therefore the claims and specification do not support Radiall's position that "tubular" infers a cylindrical shape. (*Id.*) The language in

claims 1, 16, and 17 describe how the tubular opening is formed: ". . . the shielding cap comprises a rear portion including a substantially U-shaped cross-section, said rear portion being configured to co-operate with the attachment portion of the case body so as to form a tubular opening in the case for inserting cables into the case." *See* '312 Patent at col. 11, ll. 8–12; col. 12, ll. 24–29, 49–55. The specification also provides a similar description as to how the tubular opening is formed, for example, when describing an embodiment shown in figure 10: "The shielding cap 95 has a rear portion 105 presenting a substantially U-shaped cross-section, this rear portion 105 being configured to co-operate with the attachment portion 18 of the case body 3 so as to form a tubular opening 106 enabling the cables to be inserted into the case . . ." *Id.* at col. 10, ll. 32–36.

Based upon this intrinsic evidence, the shape of the tubular opening is dependent on the "substantially U-shaped cross-section." *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004) ("[A] claim construction analysis must begin and remain centered on the claim language itself, for that is the language the patentee has chosen to particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention.") (internal quotations and citations omitted). Looking at the specification to help define what is meant by "substantially U-shaped," item 18 in figure 1 is described as "substantially U-shaped." *See id.* at col. 7, ll. 20–21; Fig. 1. Radiall also points to item 106 in figure 10 to support its construction, which is described as "substantially U-shaped." *See id.* at col. 10, ll. 32–36; Fig. 10. While these two examples support the position that "substantially U-shaped" achieves a cylindrical shape, the specification also refers to structures that contain no rounded edges as "substantially U-shaped." *See id.* at col. 8, ll. 39–49 ("support 2 presents a central portion 50 that is substantially U-shaped"); Figs. 1, 7. Item 50 in figure 1, below, is an example:

/ / /

/ / /



Therefore, "substantially U-shaped" does not limit "tubular opening" to only a cylindrical shape. *See Innova/Pure Water*, 381 F.3d at 1116 ("A patent applicant thus has the flexibility to imbue new or old terms with a different meaning than they would otherwise have to a person of ordinary skill in the art.")

The only requirement of "tubular opening" is that it must be hollow so that it can receive a cable bundle. *See, e.g.*, '312 Patent at col. 11, ll. 8–12; col. 12, ll. 24–29, 49–55. Therefore, the Court adopts Glenair's construction and construes "tubular opening" to mean "hollow opening."

| CLAIM TERM | RADIALL'S CONSTRUCTION | GLENAIR'S CONSTRUCTION |
|---|---|---|
| 3. **"Longitudinal gutter"** | A concavity in the case body forming a trough-like structure that runs lengthwise on the case body and channels or corrals cables. | A narrow channel running lengthwise |

"Longitudinal gutter" appears in claims 7 and 8. Radiall argues that "gutter" means "a concavity in the case body that channels or corrals the cables because it is most consistent with the ordinary meaning of the term." (ECF No. 45-1 at 8.) Radiall further describes "gutter" as a trough structure, consistent with dictionary definitions. (*Id*. at 9.) Glenair argues that "narrow channel" encompasses Radiall's description of "trough-like structure." (ECF No. 52 at 13.)

1  Radiall's construction is not supported by the intrinsic evidence and does not
2 add clarity to this term. For example, "trough-like" and "corrals" are unclear and not
3 found in the specification. Glenair's construction adds the term "narrow" which is
4 also unnecessary and unsupported. "Narrow" is never used in the specification and is
5 ambiguous. The claims provide enough context without having to impose further
6 limitations on the term. *See Phillips*, 415 F.3d at 1314 ("[T]he context in which a
7 term is used in the asserted claim can be highly instructive.").

8  Claims 7 and 8 require a "longitudinal gutter" that is "configured to receive an
9 insulating block for electrical contact elements, [] as far as the attachment portion."
10 *See* '312 Patent at col. 11, ll. 29–36. The specification clarifies that "the gutter can
11 serve to guide cables connected to the electrical contact elements as far as the outlet
12 zone of the connector case." *Id*. at col. 1, ll. 28–30. In one embodiment, the
13 longitudinal gutter is described as item 17 in figure 1:



21 Both parties' constructions define "longitudinal" to mean "running lengthwise."
22 Therefore, based upon the claim language and specification, the Court construes
23 "longitudinal gutter" as "a concave structure in the case body running lengthwise."
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

| CLAIM TERM | RADIALL'S CONSTRUCTION | GLENAIR'S CONSTRUCTION |
|---|---|---|
| 4. **"Fastening lug"** | A projection or handle having structure to which cables can be fastened by way of a clamping fitting. | Plain and ordinary meaning |

"Fastening lug" appears in claims 3, 16, and 17. Radiall argues that "lug" generally refers to a "handle or projection used as a hold or support" which is consistent with dictionary definitions and the specification. (ECF No. 45-1 at 10.) Glenair argues that this term requires no construction because the claim language is unambiguous and easily understandable. (ECF No. 52 at 14.)

Claims 16 and 17 describe the "fastening lug" as a structure to which cables may be fastened. *See* '312 Patent at col. 12, ll. 17–21, 38–45. The specification also consistently describes a fastening lug as the structure to which cables may be secured. *See id*. at col. 2, ll. 15–19 ("[T]he case including a shielding cap mounted on the case body, the contact elements being connected to cables secured to a fastening lug of the shielding cap, e.g., by means of a clamping fitting such as a collar."); *id*. at col. 2, ll. 30–35 ("[F]ixing the cables connected to the contact elements either to the cable-attachment portion of the case body or to the rear portion and/or the fastening lug of the shielding cap . . . ."); *id*. at col. 10, ll. 43–45 ("The bundle of cables 92 can be secured to the fastening lug 108, e.g. by means of a clamping collar 110 made of a conductive material, said collar 110 being put into place on the fastening lug 108.")

Radiall's construction requires too many limitations that are improper and unnecessary. "Projection" and "handle" are not used in the specification and does not provide further clarity to the term. Further the intrinsic evidence does not require that the fastening lug have a particular shape, only that it permits the attachment of cables. Therefore, consistent with the claim language and specification, the Court construes "fastening lug" as "a structure to which cables may be secured."

/ / /

/ / /

| CLAIM TERM | RADIALL'S CONSTRUCTION | GLENAIR'S CONSTRUCTION |
|---|---|---|
| 5. **"Cable-attachment portion"/ "attachment portion"** | A portion of the case body to which cables can be attached. The cable attachment portion projects from a rear of the case body. | Plain and ordinary meaning |

This phrase appears in claims 1, 2, 7, 16, and 17. Glenair argues that the phrases are clear from the context of the claims in which they appear. (ECF No. 52 at 16.) The Court agrees that no construction is necessary. For example, claim 1 recites: ". . . a case body including a cable-attachment portion configured to enable cables to be attached to said portion, the attachment portion projecting from a rear of the case body . . . ." '312 Patent at col. 10, ll. 64–67. Radiall's construction merely repeats what is already conveyed in claim 1. Therefore, the Court finds that "cable-attachment portion" and "attachment portion" should be given their plain and ordinary meaning.

| CLAIM TERM | RADIALL'S CONSTRUCTION | GLENAIR'S CONSTRUCTION |
|---|---|---|
| 6. **"Said rear portion being configured to co-operate with the attachment portion of the case body so as to form a tubular opening in the case for inserting cables into the case"** | A rear portion of the shielding cap is structured to work with the attachment portion of the case body in a way that the case is provided with a tubular opening through which cables can extend into the case. | Plain and ordinary meaning |

This language appears in claims 1, 16, and 17. Radiall argues that the term "co-operate with" should require that the rear portion of the shielding cap work with the cable-attachment portion. (ECF No. 45-1 at 12.) Glenair argues that no construction is necessary for this phrase since it is replete with terms already being construed by

the Court. (ECF No. 52 at 17.) Glenair further argues that Radiall's construction only adds more ambiguity than clarity to the phrase. The Court agrees and finds there is no advantage to construe "configured to co-operate with" as "structured to work with." *See Tessenderlo Kerley, Inc. v. Or-Cal, Inc.*, No. C 11-04100 WHA, 2012 WL 3276981, *3 (N.D. Cal. Aug. 9, 2012) (rejecting defendants' construction because "[a] purpose of claim construction is to remove ambiguity. Here, construing the term [as proposed by defendants] would add ambiguity . . . ."). The Court further finds that "so as to form a tubular opening" provides more clarity than Radiall's suggestion of "in a way that the case is provided with a tubular opening." "In a way" is broader than "to form" and inconsistent with the claim language and specification. As Glenair points out, under Radiall's construction, the tubular opening could be created by combining existing components or by a third element. (*Id*.) The latter is not supported by the specification. Therefore, the phrase should be afforded its plain and ordinary meaning.

| CLAIM TERM | RADIALL'S CONSTRUCTION | GLENAIR'S CONSTRUCTION |
|---|---|---|
| 7. (a) **"projection from a rear of the case body"**/ (b) **"fastening lug projecting from a tubular opening of the rear portion"** | (a) jutting out from a rear of the case body (b) fastening lug jutting out from a tubular opening of the rear portion of the case body | (a) Plain and ordinary meaning (b) Plain and ordinary meaning |

These phrases appear in claims 1, 16, and 17. Radiall seeks to construe only the phrase "projecting from" in the following claim phrases: "projecting from a rear of the case body" and "fastening lug projecting from a tubular opening of the rear portion." (ECF No. 45-1 at 13.) Radiall construes "projecting from" as "jutting out from" whereas Glenair argues that no construction is necessary. Radiall argues that the figures show that the cable-attachment portion and fastening lug "jut out" from the rear of the case body and rear of the shielding cap, respectively. (*Id*.) While that may

be the perception by Radiall, its construction still has no textual support and does not add clarity to the term "projecting from." *See Gart v. Logitech*, 254 F.3d 1334, 1342 (Fed. Cir. 2001) ("[D]rawings [in a patent] are not meant to represent 'the' invention or to limit the scope of coverage defined by the words used in the claims themselves.") Therefore, the Court finds that "projecting from" should be given its plain and ordinary meaning.

## V. CONCLUSION

For the foregoing reasons, the Court adopts the constructions set forth above.

**IT IS SO ORDERED.**

March 20, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**